IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION                          PLAINTIFF

v.                          No. 3:22-cv-247-DPM

RANGER TOOL & DIE, INC.                          DEFENDANT

ORDER

1.     The Equal Employment Opportunity Commission says
Ranger Tool & Die, Inc., an Arkansas-based industrial machine shop,
allowed sexual harassment to run rampant in its Jonesboro facility and
then fired three of its workers because they reported it.    The
Commission seeks Title VII relief on behalf of the workers.  Two of the
workers, Debra Simpkins and Hannah Simpkins (mother and
daughter), claim the harassment created a sexually hostile work
environment for them.  All three workers—Debra, Hannah, and Collin
Sellers—allege they were let go from their jobs because they openly
opposed the harassment.

Ranger Tool moves for summary judgment on some of the
Commission's claims.    The company argues that Hannah wasn't
subjected to a sexually hostile work environment and that it had
legitimate, non-retaliatory reasons to fire all three workers.  Ranger
Tool also seeks dismissal of the Commission's requests for punitive

damages. The workers say all their claims should go to trial as pleaded. Where some genuine dispute of material fact exists, the Court has taken the record in the light most favorable to the workers. *Hairston v. Wormuth*, 6 F.4th 834, 840-41 (8th Cir. 2021).

**2.** Ranger Tool concedes most elements of Hannah's *prima facie* case for sexual harassment. The Court assumes the record supports the company's concessions.

The parties agree that Hannah's claim should be evaluated under a coworker standard. None of Ranger Tool's supervisory workers were among Hannah's alleged harassers. The parties disagree about whether Ranger Tool's negligence caused any of the harassment or created conditions necessary for a sexually hostile work environment to flourish. *Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 696 (8th Cir. 2021). Even if the Court dismisses Hannah's claim, this issue will lurk in the case because Ranger Tool hasn't sought judgment on Debra's harassment claim. The Court therefore assumes that the coworker standard is met for Hannah's claim.

The deep issue here is whether the unwelcome sexual harassment Hannah experienced at Ranger Tool's facility affected a term, condition, or privilege of her employment. *Hairston*, 6 F.4th at 841. For Hannah's claim to proceed, the record must contain proof enough to convince a reasonable mind that the harassment she experienced was so severe or

- 2 -

pervasive that it poisoned her working environment. *Ibid.* Considering the totality of the circumstances, this record falls short.

First, Hannah's coworker's declaration, *Doc. 45-8*, doesn't create a genuine dispute that Hannah experienced more harassment at work than she mentioned in her deposition testimony. The coworker's observations of daily harassment are his own. It isn't reasonable to infer that Hannah's, or anyone else's, were the same.

Second, Hannah's testimony on deposition fails to establish that her coworkers touched her inappropriately or physically threatened her, that she was personally humiliated, or that the harassment she experienced at work unreasonably interfered with her performance there. *Doc. 38-8 at 17.*

Third, while clearly outside the bounds of decency, none of the conduct Hannah experienced was severe enough under controlling precedent to create a hostile work environment. *Compare LeGrand v. Area Resources for Community and Human Services*, 394 F.3d 1098, 1101 (8th Cir. 2005). Hannah heard her coworkers make both sexually explicit and suggestive comments in the break room. *Doc. 38-8 at 17-18.* She says her coworkers (male and female) "liked to be sexual" with each other "often." *Doc. 38-8 at 18, 48.* That behavior included a male coworker making a fist and "drag[ging] it back and forth towards his mouth" in what Hannah understood to be a reference to oral sex. *Doc.*

*38-8 at 44.* And she twice saw her coworkers touch each other inappropriately. *Doc. 38-8 at 19-20.* Certainly, Hannah viewed all this as hostile and abusive to her. But that isn't sufficient. The law requires both that she experience the conduct as hostile and that it is objectively hostile. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). No reasonable juror could find that the conduct Hannah described was so severe or pervasive that it altered the conditions of her employment. *Hairston*, 6 F.4th at 841-42. Her sexual harassment claim is therefore dismissed.

3.    The workers' retaliation claims are solid. Hannah, Debra, and Sellers have all met the low threshold for proving their *prima facie* cases. *Hairston*, 6 F.4th at 842. The close timing of the workers' complaints in relation to their firings suffices for causation. *Ibid.* It doesn't establish pretext, though. *Yearns v. Koss Construction Company*, 964 F.3d 671, 675 (8th Cir. 2020). For that, the Court applies the familiar *McDonnell Douglas* burden-shifting framework. *Hairston*, 6 F.4th at 842; *compare Hittle v. City of Stockton*, 145 S. Ct. 759, 761-62 (2025) (Thomas, J., surveying the criticism of applying the framework at summary judgment and dissenting from the denial of *certiorari*). The workers say that John Wallace—Ranger Tool's owner and president—had no legitimate, non-retaliatory reason to fire them. Wallace provides some reasons in a declaration. *Doc. 38-1.* The Court assumes those reasons,

-4-

if not pretextual, could be legitimate.  The workers must therefore offer sufficient proof that his reasons are pretext for unlawful retaliation.

**Hannah.**  Wallace offers two reasons for firing Hannah.  He says Hannah put in her notice to quit and that he simply told her she didn't need to come in for her last shift.  *Doc. 38-12 at 2*.  He also says, as a matter of company policy, he fired Hannah because she threatened to quit.  *Doc. 38-1 at 4*.  The Commission argues that this "no leverage" policy didn't exist or, if it existed, would directly violate Title VII's prohibition on retaliation.  Policy or no policy, a reasonable jury could easily conclude that Hannah's lost job was more likely than not attributable to her complaints about her coworker's lewd conduct. *Brown v. Diversified Distribution Systems, LLC*, 801 F.3d 901, 909-10 (8th Cir. 2015).

Hannah reported to her supervisors (Gabe Brown and Charlie Hinson) that she was having problems with a coworker.  *Doc. 38-8 at 32, 35 & Doc. 45-7 at 19*.  She said the coworker made her "workplace unbearable" and that she was "miserable" because of him.  *Doc. 45-10 at 3*.  Brown and Hinson told Hannah that they would do something about the coworker's behavior.  *Doc. 38-8 at 32, 35*.  So she agreed to keep working at Ranger Tool.  *Doc. 38-8 at 36*.  Before she could report for her next scheduled shift (the next day), Wallace fired her in a text

message. *Doc. 45-12.* The timing here strongly signals pretext. *Brown*, 801 F.3d at 909-10.

The timing alone, of course, can't wholly support a reasonable inference of retaliatory intent. *Yearns*, 964 F.3d at 675. But the twenty-four hours surrounding Hannah's firing shouldn't be viewed in isolation. *Hairston*, 6 F.4th at 844.

Going back a month, Wallace was on notice that something was amiss at Ranger Tool's Jonesboro facility. *Doc. 38-6 at 22.* Debra had anonymously—and then in person—reported "sexual things going on at work." *Ibid.* Wallace investigated and found that "no inappropriate conduct had occurred." *Doc. 38-1 at 3.* He says Hinson told him that Hannah's final complaint raised only workplace incivility. *Doc. 38-1 at 4.* The content of the conversation between Wallace and Hinson is disputed, though. And Wallace knew that Hannah had reported at least some of her coworker's sexually inappropriate behavior to his wife, Linda, earlier in the day. *Ibid.* Plus, not long after he let Hannah go, Wallace sent a text that could be read as indicating he never intended to look into the validity of her claims. *Doc. 45-9.*

Hannah also points to two comparators—her mother and Charles Taylor. Like Hannah, both Debra and Taylor threatened to quit their employment with Ranger Tool. *Doc. 45-7 at 13 & Doc. 45-8 at 2.* Unlike Hannah, both stayed on the job for a time after they made the threats.

- 6 -

Considering Wallace's policy-related justification for firing Hannah, Ranger Tool's restraint with Debra and Taylor shows that it treated similarly situated employees more leniently. This, too, is evidence of retaliatory intent. *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925 (8th Cir. 2014).

There is enough proof here to persuade a reasonable juror that Wallace fired Hannah, not because of any policy, but because he didn't want to investigate her claims of harassment in Ranger Tool's facility any further. Hannah's retaliation claim goes forward.

**Debra.** Wallace fired Debra in a text message minutes after she questioned his decision to fire Hannah. *Doc. 38-1 at 4-5*. He says he did so because Ranger Tool doesn't "allow family to intervene on behalf of a relative affected by a management decision." *Doc. 38-1 at 5*. Again, the timing points to pretext. *Brown*, 801 F.3d at 909-10. The Commission argues that enforcing this "no intervention" policy directly violates Title VII whenever an employee engages in protected activity concerning a family member. *Doc. 45 at 23*; *compare Thompson v. North America Stainless, LP*, 562 U.S. 170, 174-75 (2011). Wallace suggests that he wouldn't have fired Debra if he'd known that she was opposing what she believed to be an unlawful employment practice. *Doc. 38-1 at 5*. The policy, Wallace implies, has its exceptions.

Even if the Commission could prove that Wallace's decision was based on a mistake of fact, that wouldn't support a reasonable inference of retaliatory intent. *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 821-22 (8th Cir. 2017). But the Commission isn't merely arguing that Wallace's conclusion was wrong or based on bad information. The Commission challenges what Wallace says he knew about the substance of Debra's complaint. That's fair game. *Ibid.*

A reasonable juror could find Wallace knew that Debra sought to oppose a perceived violation of Title VII and fired her because she did so. Debra's claim will therefore proceed.

**Sellers.** Wallace says he let Sellers go because of his insubordination. *Doc. 38-1 at 5.* Sellars sent Wallace a text message questioning the legality of his decision to fire Hannah and Debra. *Doc. 38-4.* Wallace responded, warning Sellars that he was out of his lane. *Ibid.* A phone call ensued. *Doc. 38-1 at 5.* Wallace says that Sellars called him a "dumb business manager" during the call. *Ibid.* According to Wallace, that's why he fired Sellars. *Ibid.* Sellars says he never made the comment. *Doc. 38-11 at 18.* In the circumstances, Sellars's denial, if credited, could lead a reasonable juror to believe that Wallace's actions were motivated by retaliatory intent, rather than Sellars's disrespect. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48 (2000). Sellars's claim goes forward.

- 8 -

**4.**	Ranger Tool seeks dismissal of the Commission's requests for punitive damages.  Those kinds of damages are available for each of the surviving claims if the Commission can show that Ranger Tool knew its conduct risked a violation of federal law.  *Kolstad v. American Dental Association*, 527 U.S. 526, 536 (1999).  Debra's harassment claim is the closest call.  But the proof underlying both that claim and all three workers' retaliation claims—including the company's failure to publish a harassment policy or procedures for reporting workplace discrimination, *Doc. 45-2 at 11*—could lead a reasonable juror to conclude that Ranger Tool was recklessly indifferent to the working conditions at its Jonesboro facility.  The requests for punitive damages will stay in.

*

Ranger Tool's motion for partial summary judgment, *Doc. 37*, is partly granted and partly denied.  This case is second out for a jury trial in Jonesboro on 9 June 2025.

So Ordered.

D.P. Marshall Jr.
United States District Judge

3 April 2025

- 9 -